UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

| | |
|---|---|
| DANYELL THOMAS #246713, ) | |
| ) | |
| Plaintiff, ) | Case No. 2:08-cv-295 |
| ) | |
| v. ) | HON. ROBERT HOLMES BELL |
| ) | |
| DAVID BERGH, et al., ) | |
| ) | **OPINION** |
| Defendants. ) | |
| _____) | |

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

      I.      Factual Allegations

Plaintiff Danyell Thomas #246713, an inmate at the Marquette Branch Prison (MBP), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Warden David Bergh, Regional Prisoner Affairs Director James MacMeekin, Inspector Jeff Contreras, Captain Anthony Immel, Resident Unit Manager Denver McBurney, Assistant Resident Unit Manager Thomas Salo, Sergeant Karen Prunick, Sergeant Daniel W. O'Dell, Mandy Sebley R.N., Corrections Officer Jeff Cromell, Corrections Officer John Cromell, Corrections Officer Kris Petosky, Corrections Officer Tracey Bergh, Corrections Officer Joseph Naeyart, Corrections Officer Joseph Suardini, Corrections Officer Daniel Hinsa, Corrections Officer Randy Ollis, and Corrections Officer Jeffrey Drushel.

Plaintiff alleges in his complaint that he was confined at the Alger Maximum Correctional Facility (LMF) during the pertinent time period. Plaintiff states that on December 24, 2006, while he was working in the kitchen, he was approached by Defendants Immel and Petosky and ordered to remove his kitchen whites because he was being taken to segregation. Plaintiff was told that he had assaulted someone and was ordered to turn around and allow himself to be placed in handcuffs. Plaintiff denied any wrongdoing and complained that he was being taken to the "hole" for nothing. However, Plaintiff agreed to walk to segregation.

Plaintiff states that as he exiting the kitchen, he was confronted by Defendant Jeff Cromell, who blocked his path. Plaintiff turned to see Defendants Immel and Petosky approaching from behind and other officers rushing at him from every direction. Plaintiff's wrist was grabbed by Defendant Jeff Cromell and was wrenched behind his back. Plaintiff snatched his wrist from

Defendant Jeff Cromell's grasp and stated that he would walk to segregation. Plaintiff was then wrestled to the ground by Defendants Jeff Crommell, Immel, and Petosky.

Plaintiff states that other Defendants had rushed to the area and that Defendants Immel, Petosky, Jeff Cromell, John Cromell, Drushel, and Suardini began pulling Plaintiff in every direction while bending his fingers back. Plaintiff claims that he was not resisting and was yelling that none of this was necessary because he was being taken to the "hole" for "some nonsense." Leg restraints and handcuffs were placed on Plaintiff and he was jerked to his feet, lifted by the sides of his pants and arms, and was carried to a shower stall in segregation. Plaintiff asserts that Defendants continued to punch and kick him, which resulted in injuries to his eye, his face and other parts of his body. Plaintiff was placed in a shower stall, where he noticed that he was bleeding and could barely open his eye.

Plaintiff states that after a time, he was approached by Defendant Sebley, who stated that she could see blood on his face despite the dimness of the shower unit and asked Plaintiff if he needed medical attention. Plaintiff said that he did and asked to have photographs taken of his injuries. Defendant Sebley stated that she did not have the authority to have photographs taken and left after telling Plaintiff to kite if he decided he wanted medical assistance. Plaintiff attaches "testimony" of Defendant Sebley[1] to his complaint, in which she testifies that she saw a "little bit" of blood on Plaintiff's face, but that it was not dripping onto the floor, that Plaintiff was very agitated and was swearing and yelling, and that he refused medical treatment. (*See* Plaintiff's Exhibit B, pp. 65-66.)

---

[1] Also spelled Sebaly.

A short time later, Plaintiff was approached by Defendant Tracey Bergh and Corrections Officer Wickstrom, who unshackled and strip searched him and told him they were taking him across the hall to another cell. Plaintiff expressed concern that the cell had not been sanitized and that it lacked a bedroll, and stated that he needed medical attention. Plaintiff was redressed and placed back in restraints and was left in the shower stall. Shortly thereafter, Defendant Prunick came to the stall and asked Plaintiff why he would not allow himself to be placed in the cell. Plaintiff again complained about the conditions of the cell and asked for medical attention. Defendant Prunick told him to go into the cell and that she would insure he received what was needed. Plaintiff complied and was placed in cell C-122.

A few hours later, Plaintiff was taken to the hearing room to be interviewed by the Michigan State Police, where Trooper Cole asked Plaintiff what had occurred. Plaintiff explained what had happened and Trooper Cole took multiple photographs of Plaintiff's injuries. After Plaintiff was returned to his cell, Defendant Prunick reviewed six major misconduct reports with Plaintiff, and refused to call health services for Plaintiff.

On December 27, 2006, Plaintiff spoke to Defendant Salo and was finally given grievances, medical kites and stationary. Plaintiff filed a grievance regarding the excessive force and sent letters of complaint to Defendants David Bergh and Inspector Contreras. On January 19, 2007, Plaintiff was reviewed on the grievance by Defendant McBurney, who listed to Plaintiff's explanation, slammed Plaintiff's cell window shutter, and walked away. In response to Plaintiff's step I grievance, which is attached to Plaintiff's complaint, Defendant McBurney stated:

> Staff involved in this incident including the Cedar Unit bubble officer have been contacted. Captain Immel states that no direction was given at any time to attack you in any manner. Escorting officers,

> under the direction of Captain Immel, used only the amount of force necessary to control your assaultive and disruptive behavior. You not only resisted the efforts of staff to restrain you initially but you continued to resist throughout the entire escort process. Staff are found to have acted reasonable [sic] and appropriately in response to your disruptive behavior.

(*See* Plaintiff's Exhibit C.)

Plaintiff has since been transferred to MBP. Plaintiff claims that Defendants' conduct violated his Eighth Amendment rights. Plaintiff seeks damages and equitable relief.

II.     Failure to state a claim

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

As noted above, Plaintiff claims that Defendants violated his rights under the Eighth Amendment. The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of

confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton infliction of pain are those that are "totally without penological justification." *Id.*

The Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley v. Albers*, 475 U.S. 312 (1986), should be applied. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. *Id.* (citing *Whitley*, 475 U.S. at 321). Under this standard, even deadly force may be constitutionally appropriate under certain circumstances. *Gravely v. Madden*, 142 F.3d 345, 348 (6th Cir. 1998).

The analysis of the degree of force used must be made in the context of the constant admonitions by the Supreme Court that courts must accord deference to prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings. *See, e.g.*, *Whitley*, 475 U.S. at 321-22. Plaintiff claims that Defendants used unnecessary force to take him to segregation. However, it is clear from the complaint that Plaintiff did not initially allow himself to be cuffed and argued with officers about being taken to segregation. Plaintiff asserts that he offered to "walk" to segregation, but states that he when he attempted to exit the kitchen without being cuffed, his path was blocked by Defendant Jeff Cromell. Plaintiff turned to see Defendants Immel and Petosky approaching from behind and other officers rushing at him from every direction.

Plaintiff's wrist was grabbed by Defendant Jeff Cromell and was wrenched behind his back. Plaintiff snatched his wrist from Defendant Jeff Cromell's grasp and again insisted that he would walk to segregation. Plaintiff was then wrestled to the ground by Defendants Jeff Crommell, Immel, and Petosky. Following this, Defendants carried Plaintiff to the segregation unit.

Inmates cannot be permitted to decide which directives they will obey and when they will obey them. *See Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992). In circumstances where lawful orders or rules are being disregarded, prison officials are entitled to use a reasonable amount of force to obtain compliance. *Id.* "One can quickly reason what would happen in a maximum security prison without proper discipline." *See Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir. 1984). As noted above, Plaintiff's refusal to comply with Defendants' orders necessitated the use of force in this case.

The fact that Plaintiff suffered some abrasions to his face and swelling to his eye as a result of this force does not, by itself, render this force excessive. In fact, a de minimis use of physical force is beyond constitutional recognition, provided that the use of force is not of a sort "repugnant to mankind." *Id*. at 9-10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)); *see Norman v. Taylor*, 25 F.3d 1259, 1264 (4th Cir. 1994), *cert. denied* 513 U.S. 1114, 115 S. Ct. 909 (1995) ("absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is de minimis). Federal courts have routinely held that a single push, shove, punch, or blow by a prison guard does not rise to the level of a constitutional violation. *Neal v. Miller*, 778 F. Supp. 378, 383-384 (W.D. Mich. 1991) (collecting cases). The same hold true even when the push or shove appears to be unnecessary. *Hampton v.*

*Alexander*, No. 95-3457, 1996 WL 40237 (6th Cir. Jan. 31, 1996). Therefore, the court concludes that Plaintiff's excessive force claims are properly dismissed.

Moreover, the court notes that Plaintiff has not alleged that he suffered any serious physical injuries as a result of this incident. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). Therefore, because Plaintiff has failed to allege a serious medical need, his claim that Defendants were deliberately indifferent to such a need lacks merit.

Finally, the court notes that liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and

that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Plaintiff has not alleged facts establishing that Defendants David Bergh, MacMeekin, Contreras, O'Dell, Hinsa, and Ollis were personally involved in the activity which forms the basis of his claim. Defendants David Bergh, MacMeekin, Contreras only roles in this action involve the denial of administrative grievances or the failure to act. Defendants Bergh, MacMeekin, Contreras cannot be liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir.

1999), *cert. denied*, 530 U.S. 1264, 120 S. Ct. 2724 (2000).  In addition, Defendants O'Dell, Hinsa, and Ollis are not even mentioned in the body of Plaintiff's complaint.  Accordingly, the Court concludes that Plaintiff's claims against Defendants David Bergh, MacMeekin, Contreras, O'Dell, Hinsa, and Ollis are properly dismissed for lack of personal involvement.

### Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the court determines that Plaintiff's action fails to state a claim and will therefore be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A(b); 42 U.S.C. § 1997e(c).

The court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the court dismisses the action, the court discerns no good-faith basis for an appeal.  Should Plaintiff appeal this decision, the court will assess the appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the appellate filing fee in one lump sum.

This dismissal counts as a strike for purposes of 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated: January 5, 2009                         /s/ Robert Holmes Bell
                                               ROBERT HOLMES BELL
                                               UNITED STATES DISTRICT JUDGE